# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

SOULEIMANE C.,

Petitioner,

v.

TODD BLANCHE, *Acting Attorney General*; MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security*; TODD M. LYONS, *Acting Director of Immigration and Customs Enforcement*; DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*; and ERIC TOLLEFSON, *Sheriff of Kandiyohi County*,

Respondents.

Case No. 26-cv-2215 (LMP/JFD)

**ORDER GRANTING
HABEAS PETITION**

---

Kira Aakre Kelley, **Climate Defense Project, Minneapolis, MN**, for Petitioner.

Worthington Phillips, **United States Attorney's Office, Minneapolis, MN**, for Respondents.[1]

Petitioner Souleimane C. petitions for a writ of habeas corpus seeking his release from immigration detention. ECF No. 1. The Government opposes Souleimane C.'s petition, arguing that he is properly detained under 8 U.S.C. § 1225(b)(2). ECF No. 5. For the following reasons, Souleimane C.'s petition is granted as described below.

---

[1] When used in this Order, "Respondents" or "Government" refer to the federal officials named as Respondents. Respondent Eric Tollefson, the Kandiyohi County Sheriff, has not participated in these proceedings.

## BACKGROUND

Souleimane C. is a citizen of Mauritania, where he was enslaved but eventually gained his freedom and attended university. ECF No. 1 ¶ 14. However, Souleimane C. experienced threats from the Mauritanian government due to his opposition to the practice of slavery. *Id.* Accordingly, Souleimane C. fled Mauritania and arrived at the United States-Mexico border on June 13, 2023, where he was interviewed by immigration officers. ECF No. 6 ¶ 4. The next day, Souleimane C. was issued a Notice to Appear for removal proceedings, and on June 15, 2023, Souleimane C. was released from immigration detention on an order of recognizance. *Id.* ¶¶ 5–6; *see* ECF No. 6-1.

After his release from immigration detention, Souleimane C. lived in New York City and Philadelphia and remained law abiding. ECF No. 1 ¶ 17. Souleimane C. applied for asylum on April 9, 2024. *Id.* ¶ 16. On July 27, 2025, however, Souleimane C. presented himself at the United States-Canada border in an attempt to seek asylum in Canada. *Id.* ¶ 18. Canadian officials took Souleimane C. into custody and turned him over to Immigration and Customs Enforcement ("ICE") the next day. ECF No. 6 ¶ 8. ICE then took Souleimane C. into custody on a warrant of arrest issued "pursuant to section 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act." ECF No. 6-4.

Since July 28, 2025, Souleimane C. has remained in immigration custody at various detention facilities including, at present, the Kandiyohi County Jail in Willmar, Minnesota. ECF No. 1 ¶ 19. While detained, Souleimane C.'s asylum application was granted by an immigration judge on December 24, 2025. ECF No. 6 ¶ 9. However, the Government

appealed the immigration judge's decision, and the appeal remains pending before the Board of Immigration Appeals ("BIA").  *Id.* ¶ 10.  Accordingly, Souleimane C. remains detained pending a final decision from the BIA on his asylum application.

On April 13, 2026, Souleimane C. filed the instant petition for a writ of habeas corpus, alleging that his continued immigration detention violates his Fifth Amendment procedural and substantive due process rights.  *See generally* ECF No. 1.  Souleimane C. alleges that he is subject to detention, if at all, under either 8 U.S.C. § 1226(a) or "potentially under Respondents' new expanded interpretation of mandatory detention authority under 8 U.S.C. § 1225(b)."  *Id.* ¶ 35.  The Court ordered the Government to respond to Souleimane C.'s petition no later than April 20, 2026, with any reply by Souleimane C. due by April 27, 2026.  ECF No. 3.  The Government timely responded, arguing that Souleimane C. is properly detained under 8 U.S.C. § 1225(b)(2).  *See* ECF No. 5; *see also Avila v. Bondi*, 170 F.4th 1128, 1136 (8th Cir. 2026).  Because Souleimane C. is mandatorily detained pursuant to 8 U.S.C. § 1225(b)(2), so says the Government, he lacks a due process right to be released from custody.  *See* ECF No. 5 at 7– 17.  Souleimane C. timely filed a reply brief, asserting that "§ 1225(b)(2) and *Avila* are . . . not dispositive of [Souleimane C.'s] habeas because *Avila* was factually distinct in material ways."  ECF No. 7 at 2.  Specifically, Souleimane C. notes that, unlike the petitioner in *Avila*, he was released into the United States by immigration officials on an order of recognizance and was granted asylum by an immigration judge.  *Id.* at 2–3.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305–06 (2001).

As a threshold matter, the Government argues that Souleimane C. must exhaust his administrative remedies in immigration court before seeking habeas relief in this Court. ECF No. 5 at 16–17. "[T]here is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention in federal court." *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025). The exhaustion requirement for habeas petitions "is judicially created, not statutorily mandated," so it may be excused in the Court's discretion "due to time constraints or where proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose." *Id.* at 965–66 (citations omitted). The Court determines that any exhaustion concerns from the Government are outweighed by the irreparable harm that Souleimane C. asserts—unlawful detention—and the reality that review before the immigration court is all but certain to be futile, given the BIA's decision in *In re Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). Exhaustion does not bar review here. *See Jose J.O.E.*, 797 F. Supp. 3d at 965; *Eliseo A. A. v. Olson*, 811 F. Supp. 3d 1021, 1032 (D. Minn. 2025).

4

On the merits, Government counsel argues that Souleimane C. is properly detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2).  ECF No. 5 at 3–6.  If immigration officials had elected to invoke its mandatory detention authority under 8 U.S.C. § 1225(b)(2), the Court agrees that Souleimane C. would have been subject to mandatory detention because he is an "unadmitted alien[] already present inside the United States."  *Avila*, 170 F.4th at 1136.  The problem for the Government, though, is that prior to this litigation, it never invoked its mandatory detention authority under 8 U.S.C. § 1225(b)(2) to justify Souleimane C.'s detention.  Rather, the record plainly discloses that the Government has always justified Souleimane C.'s detention under 8 U.S.C. § 1226(a).

Start with Souleimane C.'s arrival to the United States-Mexico border and apprehension by immigration officials on June 13, 2023.  ECF No. 6 ¶ 4.  The mandatory detention authority of 8 U.S.C. § 1225(b)(2) provides that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings.  But that's not what happened.  Instead, the Government released Souleimane C. into the community on an order of recognizance.  *Id.* ¶¶ 5–6.  Clearly, the Government's act of releasing Souleimane C. does not purport to invoke 8 U.S.C. § 1225(b)(2), which *requires* the detention of a noncitizen.  Instead, release on an order of recognizance is "a form of 'conditional parole' from detention upon a charge of removability, *authorized under section 1226.*"  *Ahmed M. v. Bondi*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *2 (D. Minn. Jan. 5, 2026) (emphasis added) (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025)); *see J. U. v. Maldonado*, 805 F. Supp. 3d 482, 493 (E.D.N.Y. 2025)

5

("[R]elease on recognizance constitutes a form of conditional parole from detention housed in the provisions of § 1226's discretionary detention."); *see also* 8 U.S.C. § 1226(a)(2)(B) (providing that "the Attorney General may "release" a noncitizen on "conditional parole").

Fast forward to July 28, 2025, when immigration officials re-arrested Souleimane C. after he attempted to enter Canada.  Immigration officials arrested Souleimane C. on a warrant of arrest, which indicates that it was issued "pursuant to *section 236* [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act."  ECF No. 6-4 (emphasis added).  Again, then, the Government invoked 8 U.S.C. § 1226, not 8 U.S.C. § 1225(b)(2), to justify Souleimane C.'s detention.

Now, for the first time, and only in response to Souleimane C.'s habeas petition, counsel for the Government claims that everything the Government said before was wrong, and that Souleimane C. has actually been detained all along under 8 U.S.C. § 1225(b)(2).  ECF No. 5 at 3–6. The Government, of course, is correct that it now possesses the authority to detain "unadmitted aliens already present inside the United States."[2]  *Avila*, 170 F.4th at 1136.  But whether the Government *possesses* that authority is an entirely different question from whether the Government *invoked* that authority in this case.  To that end, it is black-letter administrative law that "courts may not accept [] counsel's post hoc rationalizations for agency action," and that "an agency's action must be upheld, if at all,

---

[2]   As Souleimane C. aptly notes, there are material factual differences between this case and *Avila*.  Notably, based on the Court's review of the district court docket of *Avila*, it appears that the petitioner in *Avila* was never released on an order of recognizance, nor was the petitioner in *Avila* arrested on a warrant issued pursuant to 8 U.S.C. § 1226.

on the basis articulated by the agency itself."[3]  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *see Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020) (citation omitted) (internal quotation marks omitted) (explaining that "a foundational principle of administrative law" is that "judicial review of agency action is limited to the grounds that the agency invoked when it took the action").  That rule serves salutary purposes, for "when so much is at stake, the Government should turn square corners in dealing with the people."  *Regents of the Univ. of Cal.*, 591 U.S. at 20, 24 (citation omitted) (internal quotation marks omitted).  Put simply, the Government is not allowed to change horses midstream.  It is stuck with the horse on which it rode into court.

Here, the "basis articulated by the agency" for Souleimane C.'s detention when it encountered him in 2023 (and again in 2025) has been consistent and clear: 8 U.S.C. § 1226(a).  *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50.  The Court will therefore hold the Government to its representations that it has made to Souleimane C. throughout his

---

[3]    Although this principle is ordinarily applied in cases arising under the Administrative Procedure Act, courts have also applied this principle when reviewing agency action for due process violations under the Fifth Amendment.  *See Padara Cruz v. Noem*, No. 2:26-cv-1112 (NJC), 2026 WL 555038, at *3 (E.D.N.Y. Feb. 27, 2026) (collecting cases); *cf. Yellowbear v. Lampert*, 741 F.3d 48, 58 (10th Cir. 2014) (Gorsuch, J.) (citation omitted) (explaining that "factually unsupported 'post-hoc rationalizations' aren't the stuff of summary judgment victories in [Religious Land Use and Institutionalized Persons Act] cases (or in most any other)").  Indeed, even before the APA was enacted, the Supreme Court explained that agency action "cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained."  *SEC v. Chenery Corp.*, 318 U.S. 80, 94–95 (1943); *see Wong Yang Sung v. McGrath*, 339 U.S. 33, 36 (1950) (discussing enactment of the APA in 1946).

7

removal proceedings and find that he is detained pursuant to 8 U.S.C. § 1226(a). *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (rejecting the Government's position, "adopted post hoc and raised for the first time in this litigation," that petitioner had been detained under 8 U.S.C. § 1225(b)(2)); *Jose J.O.E.*, 797 F. Supp. 3d at 969–70 (same); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 782–83 (E.D. Mich. 2025) (same).[4]

Zoom out to the broader legal landscape over the past year, and that conclusion becomes more reasonable. For decades, the Government invoked 8 U.S.C. § 1226(a) to justify discretionary detention of "noncitizens found in the United States without legal status and therefore subject to removal." *Selvin Adonay E. M. v. Noem*, No. 25-cv-3975 (SRN/DTS), 2025 WL 3157839, at *6 (D. Minn. Nov. 12, 2025) (citation omitted). The Government's push to invoke the mandatory detention authority of 8 U.S.C. § 1225(b)(2) against such noncitizens *en masse* arose from a July 8, 2025 guidance memo from ICE, which concluded that Section 1225(b)(2) applied to any noncitizen in the United States who did not possess lawful immigration status. *See* Immigr. & Customs Enf't, *Interim Guidance Regarding Detention Authority for Applications for Admission* (Jul. 8, 2025).[5] The guidance memo, however, recognized that "additional operational guidance" would need to be developed, and that ICE attorneys should continue to argue the merits of a bond

---

[4]     Souleimane C. argues that his removal proceedings have been "dismissed," ECF No. 7 at 4, but that is not correct. Souleimane C.'s asylum application remains pending on appeal before the BIA, meaning he is still awaiting "a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a).

[5]     This guidance may be found at https://perma.cc/EDD5-35FV.

request when made by such a noncitizen. *See id.* The Government's push gained real teeth on September 5, 2025, when the BIA decided in *Yajure Hurtado* that immigration judges "lack authority to hear bond requests or to grant bond" to noncitizens who are unlawfully present in the United States. 29 I. & N. Dec. at 216, 225. Although this Court and hundreds of other federal courts disagreed with the Government's interpretation of 8 U.S.C. § 1225(b)(2), *see Roberto M. F. v. Olson*, No. 25-cv-4456 (LMP/ECW), 2025 WL 3524455, at *4 (D. Minn. Dec. 9, 2025), the Eighth Circuit eventually sided with the Government's reading of Section 1225(b)(2) on March 25, 2026, *see Avila*, 170 F.4th at 1136.

Recall that Souleimane C. was detained on July 28, 2025—just a few weeks after ICE issued its interim guidance memo, and months before the Government's reading of 8 U.S.C. § 1225(b)(2) would gain real legal footing in *Yajure Hurtado*. ECF No. 1 ¶ 19. It is entirely plausible, then, that immigration officers treated Souleimane C. how they for decades had been treating noncitizens found in the United States without legal status: invoking the discretionary detention authority of 8 U.S.C. § 1226(a). That is what the record reflects, ECF No. 6 ¶¶ 4–6; ECF No. 6-4, so 8 U.S.C. § 1226(a) applies.

Having found that Souleimane C. is properly detained pursuant to 8 U.S.C. § 1226(a), the next question is one of remedy. Noncitizens detained under 8 U.S.C. § 1226(a) are entitled to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."). There is no evidence in the record, however, that the Government has ever afforded a bond hearing to Souleimane C. Depriving Souleimane C. of his right to a bond hearing—a

9

protection to which federal regulations plainly entitle him—strikes at the heart of his due process right to be free of arbitrary detention.[6]  *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *see Selvin Adonay E. M.*, 2025 WL 3157839, at *9 (finding petitioner's due process rights violated when he was denied a bond hearing despite being detained under 8 U.S.C. § 1226(a)).  Accordingly, the Court will order the Government to provide Souleimane C. with a bond hearing within seven days of this Order.[7]

## ORDER

Accordingly, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Souleimane C.'s Petition for a Writ of Habeas Corpus (ECF No. 1) is **GRANTED** as follows:

    a. The Court **DECLARES** that Souleimane C. is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and is instead subject to detention, if at all, pursuant to the discretionary provisions of 8 U.S.C. § 1226.

---

[6]  The Government's arguments on Souleimane C.'s due process claims are premised on the belief that Souleimane C. is properly detained pursuant to 8 U.S.C. § 1225(b)(2). *See* ECF No. 5 at 7–17.  As explained above, that premise is incorrect.

[7]  Souleimane C. requests immediate release from detention as a remedy.  ECF No. 1 at 16.  This Court, however, has previously concluded that when a petitioner is properly subject to detention under 8 U.S.C. § 1226(a) but denied the opportunity for a bond hearing, "the remedy for that violation is to order the Government to provide [the petitioner] with a bond redetermination hearing." *Roberto M. F. v. Olson*, No. 25-cv-4456 (LMP/ECW), 2025 WL 3524455, at *5 (D. Minn. Dec. 9, 2025).  That makes sense from a constitutional perspective, as well, because the "process" that is "due" to someone detained under 8 U.S.C. § 1226(a) is an individualized bond hearing. *See Jennings*, 583 U.S. at 306.  The Court consequently orders a bond hearing as a remedy at which the immigration judge can evaluate Souleimane C.'s amenability for release. *See* 8 C.F.R. § 1003.19(d).

b.  The Government is **ORDERED** to provide Souleimane C. with a bond redetermination hearing under 8 U.S.C. § 1226(a) on the merits of his release no later than Thursday, May 7, 2026.

c.  If the Government does not provide Souleimane C. with a bond redetermination hearing by May 7, 2026, as required by this Order, the Government is **ORDERED** to release Souleimane C. from detention immediately.

d.  No later than Friday, May 8, 2026, the Government is **ORDERED** to provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Souleimane C.'s release.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 30, 2026                    *s/Laura M. Provinzino*
                                         Laura M. Provinzino
                                         United States District Judge

11